AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   '22 MJ3564
    )
Red iPhone 11   )
Seizure No. 2022250600078901-0004   )
("Target Device")   )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Secs. 952, 960, 963 | Importation of a Controlled Substance and Conspiracy to Import a Controlled Substance |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Aaron Vargas incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Aaron Vargas
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
    telephone    *(specify reliable electronic means)*

Date:   09/29/2022

*Judge's signature*

City and state:   San Diego, California        Hon. Andrew G. Schopler, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Red iPhone 11
> Seizure No. 2022250600078901-0004
> (“**Target Device**”)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, California 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 5, 2022, up to and including September 28, 2022:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of narcotics, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Aaron Vargas, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Red iPhone 11
>
> Seizure No. 2022250600078901-0004
>
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically Importation of a Controlled Substance and Conspiracy to Import a Controlled Substance, in violation of Title 21, United States Code, §§ 952, 960, and 963, as further described in Attachment B. The requested warrant relates to the investigation of Rodrigo Zazueta-Chavez ("Zazueta-Chavez") for importation of approximately 3.38 kilograms (7.45 pounds) of cocaine and 1.10 kilograms (2.42 pounds) of heroin. **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since February 2020. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7. On September 28, 2022, at approximately 1:59 a.m., Zazueta-Chavez, entered the United States from Mexico through the Otay Mesa, California Port of Entry. Zazueta-Chavez was the driver and sole occupant of a 2010 Ford F-250 bearing a Baja California license plate ("the vehicle").

8. During primary inspection before a Customs and Border Protection ("CBP") Officer, Zazueta-Chavez stated that he was going to San Diego, California and had nothing to declare. The CBP Officer queried Zazueta-Chavez's name and date of birth in Department of Homeland Security computer systems and received a computer-generated alert. The CBP Officer then referred Zazueta-Chavez and the vehicle to secondary inspection.

9. A CBP Canine Enforcement Officer screened the vehicle and received a positive alert to a trained odor from his Narcotics and Human Detection Dog.

10. Upon further inspection, CBP Officers discovered four (4) packages magnetically attached to the underside of the vehicle.

11. Three of (3) of the packages contained a white powdery substance weighing approximately 3.38 kilograms (7.45 pounds) tested positive for the properties of cocaine, and one (1) package contained a dark sticky substance weighing approximately 1.10 kilograms (2.42 pounds) tested positive for the properties of heroin.

12. A CBP Officer recovered **Target Device** from Zazueta-Chavez.

13. Zazueta-Chavez was advised of his *Miranda* rights, elected to waive those rights, and made a statement to law enforcement without the presence of an attorney. Zazueta-Chavez stated that he owned the vehicle for approximately 3 years, and he denied knowledge of the drugs found attached to his vehicle.

14. During the interview, Zazueta-Chavez was shown the **Target Device** and positively identified it as his cellular telephone.

15. Law enforcement records checks revealed that on June 21, 2021, Zazueta-Chavez was sentenced to 24 months' custody followed by 4 years' supervised release for Importation of a Controlled Substance in violation of 21 U.S.C. §§ 952, 960 (see: 20CR3606-BAS *United States v. Zazueta-Chavez*, S.D. Cal (2021)). Zazueta-Chavez was released from federal custody and supervised release commenced on June 21, 2022.

16. Law enforcement records checks revealed that Zazueta-Chavez crossed the United States/Mexico border at a San Diego area land border crossing in the vehicle beginning July 5, 2022. Based on my training and experience, it is common for drug trafficking organizations to instruct load drivers to cross a vehicle to establish a crossing history in the weeks or months leading up to a drug smuggling venture (a tactic known as "burning plates").

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts

and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Zazueta-Chavez was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Zazueta-Chavez, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search **Target Device** for data beginning on July 5, 2022 (when Zazueta-Chavez began crossing the United States/Mexico border in the vehicle after his incarceration), up to and including September 28, 2022.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of the warrants, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//

## CONCLUSION

17. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Zazueta-Chavez's violations of Title 21, United States Code, §§ 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Aaron Vargas
Special Agent
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 29th day of September, 2022.

Honorable Andrew G. Schopler
United States Magistrate Judge